UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KHALIL FAREED,

                Plaintiff,                          Case Number 12-14300

v.                                              Honorable David M. Lawson

G4S SECURE SOLUTIONS (USA) INC.,
DOE NO. 1, and DOE NO. 2,

                Defendants.

_____/

## OPINION AND ORDER DENYING DEFENDANTS' MOTION TO DISMISS AND DIRECTING PLAINTIFF TO FILE AN AMENDED COMPLAINT

Plaintiff Khalil Fareed was to be a witness in a landlord-tenant lawsuit scheduled for a hearing in the Thirty-Sixth District Court in Detroit, Michigan on May 4, 2012. He was wearing a kufi, which is a head covering commonly worn by Muslims as a religious observance, when he attempted to gain entrance. He asserts in his complaint that two security guards employed by defendant G4S Secure Solutions (USA), Inc. forced him to either remove his kufi or be removed from the court building, even after Fareed explained the religious significance of the headwear and asserted his First Amendment rights. Fareed submitted to the guards' authority and removed the kufi, but he now brings this lawsuit asserting several constitutional violations via 42 U.S.C. § 1983 and state law. Before the Court presently is the defendants' motion to dismiss in which they argue that the plaintiff has not alleged that they were engaged in state action, and they are protected by various forms of immunity. The Court heard oral argument on April 22, 2012 and now determines that the motion must be denied.

I.

The plaintiff describes his encounter with the security guards as follows:

10.  On May 4, 2012, Plaintiff attempted to attend a hearing before the Honorable Marilyn Atkins at the 36th District Court in the City of Detroit.

11.  Prior to Judge Atkins taking the bench, Defendant Jane Doe Officer I ordered Plaintiff to remove his Kufi.

12.  Plaintiff responded by informing Defendant Jane Doe Officer I that he wears the Kufi in accordance with the tenets of his Islamic Faith.

13.  Defendant Jane Doe Officer replied that she did not care about the reason why Plaintiff wore the Kufi and that if Plaintiff refused to remove his Kufi that he would be forced to leave the 36th District Court.

14.  Plaintiff continued to protest; again informing Defendant Jane Doe Officer I that the Kufi is a religious item, and further informed Defendant Jane Doe Officer I that she had no legal authority to order Plaintiff to remove the Kufi under the First Amendment to the United States Constitution.

15.  In response Defendant Jane Doe Officer I requested support from her supervisor — Defendant John Doe Officer II.

16. . . . Defendant John Doe Officer II heard the respective arguments of both parties before informing Plaintiff that if he did not remove the Kufi he would be removed from the Courtroom and the 36th District Court.

17.  Plaintiff then asked if a similar rule would be applied to the Jewish Yarmulke or a Catholic Nun's Habit.

18.  Defendants Jane Doe Officer I and John Doe Officer II demanded that Plaintiff remove his Kufi.

19.  Under duress and over objection, Plaintiff removed his Kufi in order to testify in the 36th District Court.

Compl. ¶¶ 10-19.

The guards, the plaintiff alleges, wore police uniforms festooned with Thirty-Sixth District Court insignias and utility belts equipped with handcuffs and other tools of the trade.  He says they perform typical police security work in the court, such as transporting and maintaining custody of prisoners and coordinating their activity with other police personnel and court staff.

The plaintiff says that he protested his treatment by sending a letter to the judge presiding over the case, Judge Marilyn Atkins, on May 8, 2012.  On May 17, 2012, the judge replied, writing:

[The removal of religious attire] has never been an issue that was brought to my attention the entire 21 years I have served this Court. I never instructed any court officer to deny a person from wearing any clothing item that is worn for religious purposes.
. . .

-2-

Please accept my apology for this incident.

Compl. ¶ 21.

The plaintiff filed his complaint on September 27, 2012 alleging a violation of the First Amendment's Free Exercise Clause (count I), a violation of the Equal Protection Clause (count II), denial of access to the courts (count III), a violation of the state civil rights statute (count IV), and negligence (count V). The defendants filed their motion to dismiss, and the Court ordered that they also answer the complaint. The plaintiff filed a timely response to the motion, and the defendants replied.

## II.

The defendants' motion to dismiss is brought under the authority of Federal Rule of Civil Procedure 12(b)(6). "The purpose of Rule 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief if all the facts and allegations in the complaint are taken as true." *Rippy ex rel. Rippy v. Hattaway*, 270 F.3d 416, 419 (6th Cir. 2001) (citing *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993)). Under Rule 12(b)(6), the complaint is viewed in the light most favorable to plaintiffs, the allegations in the complaint are accepted as true, and all reasonable inferences are drawn in favor of plaintiffs. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). As the Sixth Circuit explained,

> [t]o survive a motion to dismiss, [a plaintiff] must plead "enough factual matter" that, when taken as true, "state[s] a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007). Plausibility requires showing more than the "sheer possibility" of relief but less than a "probab[le]" entitlement to relief. *Ashcroft v. Iqbal*, [556 U.S. 662, 678] (2009).

*Fabian v. Fulmer Helmets, Inc.*, 628 F.3d 278, 280 (6th Cir. 2010). Stated differently, under the new regime ushered in by *Twombly* and *Iqbal*, pleaded facts must be accepted by the reviewing

-3-

court, but conclusions ought not be accepted unless they are plausibly supported by the pleaded facts.  "[B]are assertions," such as those that "amount to nothing more than a 'formulaic recitation of the elements'" of a claim, can provide context to the factual allegations, but are insufficient to state a claim for relief and must be disregarded. *Iqbal*, 556 U.S. at 681 (quoting *Twombly*, 550 U.S. at 555).  However, as long as a court can "'draw the reasonable inference that the defendant is liable for the misconduct alleged,' a plaintiff's claims must survive a motion to dismiss." *Fabian*, 628 F.3d at 281 (quoting *Iqbal*, 556 U.S. at 678).

## A.  State action

One key element of a claim under 42 U.S.C. § 1983 is that the defendants were acting "under color of law." *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (stating that a section 1983 plaintiff must "establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law" (quoting *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006))).  The defendants, who are a private corporation and its employees, contend that the plaintiff has not pleaded sufficient facts on that element to go forward with his complaint.

It is true that under section 1983, the party charged with violating the plaintiff's constitutional rights "must be a person who may fairly be said to be a state actor." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982).  But the term "state actor" is not confined to employees of the state or its political subdivisions or agencies. *Id.* at 941.  (stating that "[t]o act 'under color of law' does not require that the accused be an officer of the State").  A person may be a state actor within the meaning of section 1983 if "he has acted together with or has obtained

-4-

significant aid from state officials, or because his conduct is otherwise chargeable to the State." *Ibid.*

"The Supreme Court has developed three tests for determining the existence of state action in a particular case: (1) the public function test, (2) the state compulsion test, and (3) the symbiotic relationship or nexus test." *Chapman v. Higbee Co.*, 319 F.3d 825, 833 (6th Cir. 2003). "Under the public function test, a private party is deemed a state actor if he or she exercised powers traditionally reserved exclusively to the state." *Ibid.* Other courts have found that private security guards can be state actors under the public function test. For instance, the Sixth Circuit has held that private security guards operating entirely on the private property of their employers may be state actors, where state law grants them "plenary police power" while in uniform and on the employer's premises. *Romanski v. Detroit Entertainment, LLC*, 428 F.3d 629 (6th Cir. 2006). Similarly, the United States District Court for the Middle District of Tennessee, dealing with a remarkably similar case earlier this year, found that this same defendant's security guards working at a local courthouse engaged in state action when they barred a kufi-wearing litigant from the building. *Al-Qadir v. G4S Secure Solutions (USA) Inc.*, No. 11-0357, 2013 WL 64779 (M.D. Tenn. Jan. 3, 2013). The district court found that the complaint adequately pleaded state action under the public function test, because the private G4S guards were carrying out the state's obligation to control access to all courthouses, a duty explicitly imposed on the county sheriff under Tenn. Code Ann. § 5-7-108(a)(1). The court explained that

> the plaintiff has alleged that the state . . . delegated that duty to G4S, and that the defendant accepted this delegation by providing security and safety services at the Juvenile Justice Center. Thus, construing the factual allegations of the Amended Complaint in the light most favorable to the plaintiff, it is reasonable to infer that G4S was performing an exclusive state function when it denied the plaintiff access

to the Juvenile Justice Center . . . unless he removed his kufi and kept it off while in the courthouse.

*Al-Qadir*, 2013 WL 64779, at *4.

As the Sixth Circuit has explained, "[t]he rationale of [cases finding private security guards to be state actors] is that when the state delegates a power traditionally reserved to it alone — the police power — to private actors in order that they may provide police services to institutions that need it, a 'plaintiff's ability to claim relief under § 1983 [for abuses of that power] should be unaffected.'" *Romanski*, 428 F.3d at 637 (quoting *Payton v. Rush-Presbyterian*, 184 F.3d 623, 629 (7th Cir. 1999). The defendants contend that the public function test is not satisfied by the allegations in the complaint in this case because the plaintiff has not alleged that the state has delegated its plenary police authority to private guards while they are present in the courthouse. Rather, he only alleges that the guards asked him to remove his hat, the defendants contend that the plaintiff cannot demonstrate that they exercised any power that is traditionally exclusively reserved to the state. The defendants rely primarily on *Wade v. Byles*, 83 F.3d 902 (7th Cir. 1996), where the court found that private security guards employed by a public housing authority were not state actors because the authority had its own separate official police force with general jurisdiction over all public housing property; the private guards had authority to act only within the lobby areas of housing units; the guards had no greater authority to arrest or detain than a private citizen could exercise; and although they were armed, they could use deadly force only in self-defense. According to the defendants, because the plaintiff has not alleged that the state has delegated its plenary police authority to private guards while they are present in the courthouse, and only alleges that the guards asked him to remove his hat, he cannot demonstrate that they exercised any power that is traditionally exclusively reserved to the state.

-6-

However, the defendants make too much of their cited case.  The plaintiff need not allege a delegation of "plenary authority" to establish state action.  Certainly, plenary delegation is a sufficient condition for state action, *Romanski*, 428 F.3d at 637, but no court has held that it is a necessary one.  It is enough to state, as the plaintiff has alleged, that G4S's guards were empowered by the district court to perform security work typical of court security officers.  Under Michigan law, the City of Detroit is obliged to provide security for the Thirty-sixth District Court facilities.  Mich. Comp. Laws § 600.8283 ("In the thirty-sixth district, the district control unit shall be responsible for maintaining court security.  Persons providing security services shall be assigned subject to the approval of the chief judge of the thirty-sixth district and, when performing services in the courtroom, shall be subject to the control of the judge holding court."); Mich. Comp. Laws § 600.8104(1) ("The term 'district funding unit' or 'district control unit' means . . . [t]he city or the township in districts of the third class."); Mich. Comp. Laws § 600.8121a ("The thirty-sixth district consists of the city of Detroit and is a district of the third class.").  The defendant and its guards perform a "public function" of the first order — granting or denying access to the public courthouse and the proceedings within.  Whether it acts at the direction of the City or the court itself, there can be no question that when a private security company accepts the delegation of the state's authority to control admittance to the courts, that company is a state actor and therefore becomes subject to the regulation of its conduct under 42 U.S.C. § 1983.

The complaint also can be read to allege state action under the symbiotic or nexus test.  The plaintiff need only state facts that "demonstrate that there is a sufficiently close nexus between the government and the private party's conduct so that the conduct may be fairly attributed to the state itself."  *Chapman v. Higbee Co.*, 319 F.3d 825, 834 (6th Cir. 2003); *see also Brentwood Acad. v.*

-7-

*Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001) (noting that a challenged activity may be state action "when it is entwined with governmental policies or when government is entwined in [its] management or control"(internal quotation omitted)).  The plaintiff has alleged that G4S's guards wore uniforms emblazoned with the court insignia and asserted authority to grant and deny access to a public courtroom.  Those allegations allow the plausible inference that the defendants were state actors.

### B.  Sovereign immunity

The defendants next argue that they are entitled to assert sovereign immunity under the Eleventh Amendment even though they are not an arm of the sovereign.  They rely mainly on *Filarsky v. Delia*, 132 S. Ct. 1657, 1665 (2012).  However, *Filarsky* dealt with the extension of qualified immunity to a private attorney hired to assist in a city fire department's internal affairs investigation.  The defendants have not raised qualified immunity in their motion.

The defendants contend that they are entitled to sovereign immunity as an "agent of the state."  G4S asserts that because the plaintiff has sued it, and named its guards both as individuals and in their "official capacities" as employees of G4S, he is "essentially bringing suit against G4S as an agent of the 36th District Court, and likewise the state."  G4S cites *Pucci v. Ninenteenth District Court*, 628 F.3d 752 (6th Cir. 2010), for its holding that the state district level trial courts in Michigan are "arms of the state" and entitled to sovereign immunity.

To determine whether an entity is an "arm of the state," the Sixth Circuit considers four factors: "(1) whether the state would be responsible for a judgment against the entity in question; (2) how state law defines the entity; (3) what degree of control the state maintains over the entity; and (4) the source of the entity's funding."  *Ernst v. Rising*, 427 F.3d 351, 359 (6th Cir. 2005)

-8-

(quoting *S.J. v. Hamilton County*, 374 F.3d 416, 420 (6th Cir. 2004) (quotation marks omitted)).

Of these factors, the first predominates in any evaluation of whether immunity extends to a private

entity. *Brotherton v. Cleveland*, 173 F.3d 552, 560-61 (6th Cir. 1999). As the Supreme Court

explained, "[i]f the expenditures of the enterprise exceed receipts, is the State in fact obligated to

bear and pay the resulting indebtedness of the enterprise? When the answer is 'No'— both legally

and practically — then the Eleventh Amendment's core concern is not implicated." *Hess v. Port

Auth. Trans-Hudson Corp.*, 513 U.S. 30, 51 (1994).

The Sixth Circuit apparently has not decided whether a private contractor providing services

to a state trial court is entitled to sovereign immunity, but its decisions on point suggest that a private

company is not entitled to claim sovereign immunity simply because it has contracted with the state.

In *Brotherton v. Cleveland*, 173 F.3d 552 (6th Cir. 1999), the Sixth Circuit held that the Eye Bank

Association of America was a "state actor" and thus amenable to suit under 42 U.S.C. § 1983 for

removing the corneas of dead bodies in the custody of the county coroner for the purpose of autopsy,

without the consent of family members who objected to the removal. The court also concluded that

the EBAA was not entitled to sovereign immunity, because it did not operate as an "arm of the

state," which was shown mainly because the EBAA was a private, nonprofit organization, not

regulated by the state other than under its general regulation of all corporations. The court noted

that the state had no financial involvement with the EBAA and did not supervise its operations, and

the only evident connection between the association and the state was a statute that enabled coroners

to permit eye banks to remove corneas of dead bodies in their custody at the request of eye bank

officials.

-9-

The Ninth Circuit denied a claim of sovereign immunity by a private, for-profit corporation hired by a county prosecutor to administer a diversion program for persons who wrote bad checks, despite noting that the prosecutor himself would be entitled to that immunity as an official of both the county and state. *Del Campo v. Kennedy*, 517 F.3d 1070 (9th Cir. 2008); *see also Rosario v. American Corrective Counseling Services, Inc.*, 506 F.3d 1039 (11th Cir. 2007) (holding that a similar company under contract to a state attorney's office to operate a "bad check" program authorized by statute was not entitled to sovereign immunity). In *Del Campo*, the court noted that "the Supreme Court has been cautious in extending state sovereign immunity even to many state-created and quasi-governmental entities." *Del Campo*, 517 F.3d at 1075 (citing *Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30 (1994); *Lake Country Estates, Inc. v. Tahoe Reg'l Planning Agency*, 440 U.S. 391 (1979); *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977)). The court explained that "[g]iven this background we should be extremely hesitant to extend this fundamental and carefully limited immunity to private parties whose only relationship to the sovereign is by contract. . . . [and this] reluctance to expand sovereign immunity to private entities is reinforced by the consideration that the recognition of state sovereign immunity with regard to an entity results in restrictions on federal legislative as well as judicial authority with regard to that entity." *Id.* at 1076.

Other federal courts have reached similar holdings when confronted with claims to sovereign immunity by private entities operating under contract with a state. *Burrus v. State Lottery Commission of Indiana*, 546 F.3d 417 (7th Cir. 2008) (holding that state lottery commission was not entitled to sovereign immunity, principally because under state law it was required to be self-funding, maintained its own funds separately from the state treasury, and the state expressly

disclaimed any liability for judgments against it); *United States ex rel. Barron v. Deloitte & Touche, L.L.P.*, 381 F.3d 438 (5th Cir. 2004) (holding that private company under contract to handle Medicaid claims and disburse state funds in payment was not entitled to sovereign immunity); *but see Wojcik v. Massachusetts State Lottery Commission*, 300 F.3d 92 (1st Cir. 2002) (finding lottery commission entitled to sovereign immunity based on its statutory purpose to provide funds to offset property taxes and "limited ability" to satisfy any judgment except by drawing on state appropriated funds); *Shands Teaching Hosp. and Clinics, Inc. v. Beech Street Corp.*, 208 F.3d 1308 (11th Cir. 2000) (holding a private company engaged to process claims under state insurance program entitled to sovereign immunity because disputed claims would be paid from state funds if plaintiffs prevailed and state retained ultimate authority to pay or deny claims).

G4S has not established that it was so intimately involved with the State as to qualify for the protection of sovereign immunity.  Other than asserting that it operates as a private contractor providing security services, G4S has not shown that it has any other relationship with any public body.  It is unclear from the complaint and the parties' briefing on this motion whether G4S operates under a contract with the City of Detroit or with the Thirty-sixth District Court directly.  A contract with the City is more likely, since the City is obligated by statute to furnish security services.  If that is the case, G4S can claim to be at most an agent of the City carrying out the City's duty to provide court security. That status provides G4S no protection, since sovereign immunity "does not extend to suits prosecuted against a municipal corporation or other governmental entity which is not an arm of the State." *Alden v. Maine*, 527 U.S. 706, 756 (1999).

Moreover, the defendants do not address any of the factors that the Court must consider in deciding whether sovereign immunity applies, and nothing in the record suggests that those factors

-11-

would favor G4S in its argument. First, G4S is evidently a private, for-profit corporation, not funded by the State other than incidentally through its contract revenue. There is no suggestion that the State is in any way financially responsible for judgments against G4S or that it funds G4S's operations generally. Second, G4S does not point to any statutory or regulatory authority that directs its conduct, and it apparently is regulated by the State, if at all, only in the same way as other private security corporations, and subject to the terms of its contract. Finally, although the plaintiff alleges that G4S operates at the direction of the Thirty-sixth District Court and the Detroit Police Department in carrying out its duties within the courthouse, there is no suggestion that either the court or the police direct or control its operations generally (e.g., nothing suggests that the State or city have any part in electing its board of directors).

The defendants are not entitled to sovereign immunity.

### C.  Judicial/Quasi-judicial immunity

The defendants argue that they are entitled to absolute quasi-judicial immunity, because, according to the plaintiff's allegations, G4S's guards were performing a judicial function on behalf of the court by maintaining courtroom decorum. The defendants cite *Muhammad v. Weis*, No. 08–3616, 2009 WL 2525454 (E.D. Pa. Aug. 17, 2009), as a case in which deputies were found to be protected by quasi-judicial immunity, when they were summoned by a judge and ordered to remove the plaintiff from the courtroom.

Judges are absolutely immune from suits for money damages when performing judicial functions. *Mireles v. Waco*, 502 U.S. 9, 11 (1991). Judicial immunity has been extended to non-judicial officers when they perform quasi-judicial duties. *Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994). "Quasi-judicial immunity extends to those persons performing tasks so integral or

-12-

intertwined with the judicial process that these persons are considered an arm of the judicial officer who is immune." *Ibid.*

As a general rule, non-judicial personnel, such as court officers, are protected by the mantle of quasi-judicial immunity when they follow an explicit directive from the court itself. "An official is entitled to absolute quasi-judicial immunity when that official acts pursuant to a valid court order because the act of enforcing or executing a court order is intrinsically associated with a judicial proceeding." *J.P. Silverton Industries L.P. v. Sohm*, 243 F. App'x 82, 89 (6th Cir. 2007) (quoting *Cooper v. Parrish*, 203 F.3d 937, 948 (6th Cir. 2000)) (quotation marks and alterations omitted). "Other circuits have similarly recognized immunity for officials carrying out court orders." *Ibid.* (collecting cases).

"The Supreme Court has long held that a judge's exercise of control over the courtroom, including the admission and expulsion of attorneys and litigants, is a judicial act." *Ingram v. Township of Deptford*, 858 F. Supp. 2d 386, 391 (D.N.J. 2012) (citing *Bradley v. Fisher*, 80 U.S. 335, 346-47 (1871). "A judge's directions to court officers to bring a person who is in the courthouse before him is a function normally performed by a judge." *Mireles*, 502 U.S. at 12. Conversely, "barring admittance to the courtroom [is also a] judicial act [that qualifies for the protection of absolute immunity]." *Cameron v. Seitz*, 38 F.3d 264, 271 (6th Cir. 1994).

Nevertheless, at least one district court has drawn a careful distinction between cases where a courtroom deputy or police officer is carrying out a judge's orders, and those where the specific conduct alleged (e.g., use of excessive force), was not taken at the judge's direction. *Ingram*, 858 F. Supp. 2d at 391. Acknowledging a circuit split in the area of excessive force violations, the *Ingram* court adopted the rule set out by the Seventh Circuit in *Richman v. Sheahan*, 270 F.3d 430

-13-

(7th Cir. 2001), noting its view that "the Eighth Circuit [in *Martin v. Hendren*, 127 F.3d 720 (8th Cir. 1997)] stretches the reasoning in *Mireles* too far, and confuses the question . . . whether the challenged conduct was specifically ordered by the judge with the separate question of whether the conduct was lawful or exceeded the actor's authority." *Ingram*, 858 F. Supp. 2d at 395 (quoting *Richman*, 270 F.3d at 436 (quotation marks omitted)). As the *Ingram* court explained, "the conduct at issue in *Martin* and *Richman* was not the judge's order but the manner in which the order was enforced. . . . '[T]he deputies are not being called upon to answer for wrongdoing directed by the judge, but instead for their own conduct.'" *Ibid.* (quoting *Richman*, 270 F.3d at 437-38).

The *Ingram* court concluded that "while courtroom order is important and providing security to judges, litigants, and courtroom personnel is imperative," extending absolute immunity to an unconstitutional use of excessive force in carrying out a judge's orders was not "'necessary to the judicial function.'" 858 F. Supp. 2d at 395, 398 (quoting *Richman*, 270 F.3d at 439). As the *Ingram* court noted, "[t]he Supreme Court has consistently 'emphasized that the official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question. . . . [The Court] has been quite sparing in its recognition of absolute immunity, and has refused to extend it any further than its justification would warrant.'" *Id.* at 396 (quoting *Burns v. Reed*, 500 U.S. 478, 486-87 (1991) (alterations omitted)).

As the defendants acknowledged at oral argument, the cases applying judicial immunity to the conduct of a person other than a judge all involve acts in furtherance of an explicit judicial command. *See Mireles v. Waco*, 502 U.S. 9, 11 (1991) (order for police officers to bring an attorney to the courtroom); *Martin v. Hendren*, 127 F.3d 720 (8th Cir. 1997) (order to a bailiff to remove a witness from the courtroom); *Cameron v. Seitz*, 38 F.3d 264, 271 (6th Cir. 1994) (order barring a

-14-

counselor from appearing in the courtroom); *Daniels v. City of North Charleston*, No. 12-0319, 2012 WL 3877710 (D.S.C. Aug. 9, 2012) (court policy forbidding plaintiff from wearing a hat in the courtroom); *Smith v. Cuyahoga County*, No. 10-00754, 2011 WL 2671529 (N.D. Ohio July 8, 2011) (court ordered interviews of plaintiff and her children by staff psychologist); *Muhammad v. Weis*, No. 08–3616, 2009 WL 2525454 (E.D. Pa. Aug. 17, 2009) (orders for deputies to remove plaintiff from courtroom).  None of the cases conferred immunity on actions taken at the discretion of the individual officer in the absence of the judge and without any explicit judicial order in force.

There is no record of any judicial command here to remove the plaintiff from the courtroom or to compel him to remove his kufi.  To the contrary, the plaintiff has alleged in his complaint that the presiding judge expressly disavowed any such order and actually apologized for the conduct of G4S's officers.  The defendants have not demonstrated an entitlement to quasi-judicial immunity.

### D.  Governmental immunity

The defendants lastly argue that they are entitled to statutory governmental immunity under Michigan Compiled Laws § 691.1407 on counts IV and V of the complaint alleging a violation of the state civil rights statute and common law negligence.  They appear to suggest that the guards fall within the category of "officers and employees of government agencies" protected by the statute, but the defendants do not explain how G4S qualifies as a "government agency," or how a private corporation would be included in the enumeration of "officers and employees."  G4S cites *McPherson v. Kelsey*, 125 F.3d 989 (6th Cir. 1997), as an illustrative case.  But *McPherson* did not concern any private security guard; rather, the court found that a sheriff's deputy was covered by statutory immunity because he was acting within the scope of his employment with the sheriff's

department when he stopped and frisked a person acting suspiciously within the courthouse, for which sheriff's deputies provided security.

Instead, the Michigan Court of Appeals has concluded that there is "no reason to extend the protection of governmental immunity to a private entity merely because it contracts with the government." *Roberts v. City of Pontiac*, 176 Mich. App. 572, 578, 440 N.W.2d 55, 57 (1989). "[A]n employee of a private corporation that is doing business with a public agency is not entitled to governmental immunity." *Wilson ex rel. Wilson v. Detroit School of Indus. Arts*, No. 265508, 2006 WL 1237033, at *3 (May 9, 2006) (citing *Rambus v. Wayne Co. Gen. Hosp.*, 193 Mich. App. 268, 270-273, 483 N.W.2d 455, 456-57 (1992), *aff'd on reh'g* 197 Mich. App. 480 (1992); *Roberts*, 176 Mich. App. at 578, 440 N.W.2d at 57)). "A private entity's performance of a governmental function does not confer governmental agency status on that entity." *O'Neill v. Emma L. Bixby Hosp.*, 182 Mich. App. 252, 256, 451 N.W.2d 594, 596 (1990) (quoting *Jackson v. New Center Community Mental Health Servs.*, 158 Mich. App. 25, 35, 404 N.W.2d 688, 692 (1987)) (quotation marks omitted).

The defendants have not offered any justification for departing from this well-established line of authority.

## III.

The Court finds that the plaintiff has pleaded allegations that establish that the defendants engaged in state action. The defendants have not shown how the complaint's allegations subject the plaintiff's claims to the immunity defenses advanced in the motion to dismiss.

The plaintiff has not identified the individual security guards in the complaint. The defendants informed the Court at oral argument that they have disclosed the identities of those

-16-

individuals to the plaintiff.  Because the plaintiff cannot maintain an action against "John Doe"

defendants indefinitely, the Court will direct him to amend his complaint to name the individuals.

Accordingly, it is **ORDERED** that the defendants' motion to dismiss [dkt. #8] is **DENIED**.

It is further **ORDERED** that the plaintiff must file an amended complaint **on or before May 8, 2013** that either identifies the individual defendants or deletes the "John Doe" defendants.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:   April 29, 2013

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on April 29, 2013.

s/Deborah R. Tofil
DEBORAH R. TOFIL